IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MATTHEW JACKSON TAYLOR, )<br>    Plaintiff, ) | Civil Action No. 7:20-cv-00147 |
| ) | |
| v. ) | |
| ) | |
| SOUTHWEST VIRGINIA REGIONAL ) | By: Elizabeth K. Dillon |
| JAIL AUTHORITIES AT DUFFIELD, *et al.*, ) | United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

    This action was brought by plaintiff Matthew Jackson Taylor, a Virginia inmate proceeding *pro se*, pursuant to 42 U.S.C. § 1983. In his amended complaint, Taylor alleges that defendants violated various of his constitutional rights. The only incident he references, however, is a September 17, 2019 incident that occurred while he was incarcerated at the Southwest Virginia Regional Jail in its Duffield facility. He alleges that, on that date, defendants failed to protect him from a potential assault from another inmate, who had previously assaulted Taylor on August 7, 2019. On the September date, which was the other inmate's release date, the other inmate was being moved to the same pod where Taylor was housed. Although Taylor states that the sergeant on duty announced over the radio that Taylor and the other inmate were not to be out in the pod at the same time, Taylor nonetheless insists that the decision to house the other inmate in his pod put Taylor at grave risk of attack. He says that, as a result, he was "made to protect" himself, which in turn resulted in Taylor being charged criminally. (Am. Compl. 4, Dkt. No .19.)

    Taylor's description of the September 17 events is not detailed, but according to defendants, Taylor hid behind a door and—without any provocation— attacked the other inmate, who was being escorted by a corrections officer. The other inmate fell and hit his head, causing a very serious head injury that led to his death approximately a month later. Criminal charges

were filed against Taylor as a result of the incident.  (Patrick Aff. ¶ 4, Dkt. No. 26-1.)

Pending before the court are two motions for summary judgment by two different sets of defendants.[1]  Those motions seek summary judgment in favor of all defendants on the grounds that Taylor failed to properly exhaust his administrative remedies prior to filing suit.  Because the undisputed evidence shows that Taylor did not exhaust his available administrative remedies, the court will grant the motions for summary judgment, and dismiss Taylor's claims without prejudice.

## I.  SUMMARY JUDGMENT STANDARD

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[2]  In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

---

[1] All defendants in the case have moved for summary judgment.  The first motion was brought by defendants Southwest Virginia Regional Jail Authority, Kelly, Barber, Whited, Stanley, Parks, Hayes, Clear, Edmonds, Hounshell, and Burnette.  (Dkt. No. 26.)  The second was brought by defendants Pike, Stine, and Lawson.  (Dkt. No. 45.)

[2] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted.  *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

properly supported motion for summary judgment." *Id.* at 247–48.  Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor.  *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

## II.  DISCUSSION

### A.  Exhaustion Under the Prison Litigation Reform Act

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improve[es] litigation that does occur by leading to the preparation of a useful record."  *Jones v. Bock*, 549 U.S. 199, 219 (2007).  "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."  *Id.* at 211.

The PLRA requires "proper exhaustion" of available remedies prior to filing suit.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  "[P]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceeding."  *Id.* at 90–91.  Thus, an inmate's failure to follow the required procedures of the prison's administrative remedy process, including time deadlines, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim.  *Id.* at 90.  Notably, moreover, district courts may not "excuse a failure to exhaust."  *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones*, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable through no fault of the inmate. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

**B. Exhaustion Attempts by Taylor at the Southwest Virginia Regional Jail in Duffield**

According to the affidavit testimony of Administrative Lieutenant Jeannie Patrick, the Southwest Virginia Regional Jail Authority ("SWVRJA") has an inmate handbook which sets forth the process by which an inmate can file for administrative remedies. First, he must informally attempt to resolve his grievance. If those efforts are unsuccessful, then he must file a grievance within seven days of the occurrence of the incident at issue. Patrick avers that Taylor was notified of the grievance procedures when he was booked into the facility and signed a form

4

so acknowledging. He also had access to the grievance procedures in the inmate kiosk. Patrick further testifies that Taylor had access to the grievance forms throughout the duration of his incarceration, and he was not subject to any medical disability preventing him from utilizing the grievance procedures. Despite this, Taylor did not file a timely grievance nor did he attempt to pursue informal resolution of his grievance before filing a formal grievance. (Patrick Aff. ¶¶ 2–4 & Exhibit 1, Dkt. No. 26-1.)

Patrick explains Taylor's efforts at exhaustion as follows:

> I have reviewed all of the Request Forms and grievances submitted to the SWVRJA by the plaintiff. The plaintiff did not submit any informal requests (the first step in the grievance process) within a timely manner relative to the September 17, 2019 or August 7, 2019 incidents referenced in his amended complaint. The plaintiff submitted three grievances with respect to his allegations that the defendants failed to protect him on September 17, 2019. The first was filed on December 30, 2019 and did not reference a specific issue which could be responded to. The second grievance was filed on January 23, 2020. Arguably, a third grievance was submitted on January 30, 2020 regarding the September 17, 2019 incident, but it was closed without appeal by the plaintiff. The plaintiff did not submit any grievances with respect to the August 7, 2019 incident referenced in his amended complaint.

(*Id.* ¶ 3; *see also* Exhibit C to Patrick Aff. (grievance forms submitted by Taylor).) Thus, it appears that defendants have shown that Taylor did not properly exhaust his administrative remedies. Instead, Taylor first filed a grievance related to the September 17, 2019 incident in his complaint (and the August 7, 2019 prior incident he also references) on December 30, 2019.

In unsworn responses to the summary judgment motions, Taylor acknowledges that he did not timely exhaust his administrative remedies. He offers two reasons for his failure to exhaust, but neither of them of them satisfy his burden to show that the remedies were unavailable to him, through no fault of his own. *See Tuckel*, 660 F.3d at 1254.

5

First, Taylor contends that he did not know that he had to exhaust grievances at the jail in order to file litigation. Instead, it took him months of legal research to learn of his obligation to exhaust. (Pl.'s Resp. to Mot. Summ. J. 1, Dkt. No. 49.) Relatedly, he claims that he was in a segregated housing unit ("SHU") for 35 days after the September incident and that fact limited his ability to research. (*Id.*) Ignorance of the law, however, does not render administrative remedies unavailable. *Napier v. Laurel Cty.*, 636 F.3d 218, 221 n.2 (6th Cir. 2011) ("A plaintiff's failure to exhaust cannot be excused by ignorance of the law or the grievance policy.") (collecting cases); *Adams v. Southwest Va. Reg'l Jail*, No. 7:12cv00462, 2014 WL 3828392, at *3 (W.D. Va. Aug. 4, 2014) (citing *Napier* and other authority for the same proposition). Moreover, although Taylor does not expressly contend that he could not file because he was in the SHU or because he was injured as a result of the September 17, 2019 incident, both contentions are directly addressed and rejected by Patrick's testimony. (Patrick Aff. ¶ 5.) Indeed, as Patrick explains, Taylor "used the Kiosk system a number of times in the week following the September 17, 2109 incident and numerous other times before filing the first grievance on December 30, 2019." (*Id.*) Nowhere does Taylor dispute that testimony.

The second reason Taylor gives for not exhausting is that he did not believe that there was a "remedy available to [him]" because the acts had already been committed and "what had happened couldn't be fixed after it happened." (Pl.'s Resp. to Mot. Summ. J. 1.) Numerous courts have held, however, that "a prisoner must exhaust his administrative remedies . . . 'even where the inmate claims that exhaustion would be futile.'" *Adams*, 2014 WL 3828392, at *3 (quoting *Reynolds v. Doe*, 431 F. App'x 221, 222 (4th Cir. 2011)). A prisoner also must exhaust "even if the specific relief he seeks in his complaint is not available through the administrative process." *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Thus, even if a prisoner does

6

not think he will obtain the relief he wants from the administrative process, he still must exhaust. *See id.*  The undisputed evidence in this case shows that Taylor failed to do so.

### III.  CONCLUSION

For the foregoing reasons, the court concludes that defendants' motions for summary judgment should be granted and Taylor's claims should be dismissed without prejudice for failure to exhaust.  An appropriate order will be entered.

Entered: February 16, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge